# Exhibit R

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ASPEN AMERICAN INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:21-cv-00738 |
| | : | |
| MF ACQUISITION INC., formerly known as MOURER FOSTER, INC. and OHANA ENTERPRISES LLC | : | Hon. Robert J. Jonker |
| | : | |
| Defendants. | : | |
| | : | |

## AFFIDAVIT OF MATTHEW B. PRICE IN SUPPORT OF PLAINTIFF ASPEN AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

STATE OF _NEW JERSEY_ )
              ) ss.:
COUNTY OF _BERGEN_ )

I, MATTHEW B. PRICE, having personal knowledge, being competent to testify, would testify as follows if called under oath:

1.　I am over eighteen years of age, and I am competent to testify to the facts set forth herein.

2.　I submit this Affidavit in support of Plaintiff Aspen American Insurance Company's ("Aspen") Motion for Summary Judgment ("MSJ").

3.     I have been employed by Aspen since OCTOBER 2011 and presently hold the title of SENIOR VICE PRESIDENT, HEAD OF FINPRO PROGRAM OPERATIONS.

4.     I am familiar with Aspen's underwriting practices as they existed at the time Mourer-Foster, Inc. ("Mourer-Foster") submitted its application for professional liability insurance on or about November 6, 2020.

5.     I have reviewed the Aspen Professional Liability Insurance for Insurance Agents and Brokers Policy, policy number ASP334402-0120 issued on a claims-made-and-reported basis, to Mourer-Foster, Inc. ("Mourer-Foster") for the policy period of November 9, 2020 to November 9, 2021 (the "Aspen Policy" is attached hereto as **Exhibit A**).

6.     I have reviewed the document titled "Professional Liability Insurance Application for Insurance Services," dated November 6, 2020, which was signed by John T. Foster, the President of Mourer-Foster (the "Aspen Application" attached hereto as **Exhibit B**).

7.     Question No. 35 of the Aspen Application reads as follows:

Is the Applicant Firm or any principal, partner, officer, director, managing member or professional employee in the Applicant Firm aware of any fact, circumstance, or situation that might result in any professional liability claim or suit against the Applicant Firm or any past or present principal, partner, officer, director, managing member, employee, independent contractor, sub-agent, sub-producer or solicitor of the Applicant Firm?

(*See* **Exhibit B** at p. 9).

**Page 2 of 4**

8.  Mourer-Foster responded to Question No. 35 of the Application by stating "No." (*Id.*)

9.  Aspen relied on the accuracy of Mourer-Foster's representations in the Aspen Application when assessing the risk and issuing the Aspen Policy

10. Mourer-Foster's response to Question No. 35 of the Aspen Application was material in Aspen's assessment of the risk in issuing the Aspen Policy.

11. If Mourer Foster had accurately answered "Yes" to Question No. 35 and disclosed in the required claim supplement that Nick Holton, one of Mourer-Foster's professional employees, had knowledge of facts and circumstances regarding the non-renewal of Ohana Enterprise, Inc.'s ("Ohana") Policy, the risk would have been rejected and the Aspen Policy would not have been issued or, alternatively, Aspen would have issued the Aspen Policy on materially different terms, such as charging a higher premium or including an exclusion for claims arising out of the disclosed circumstance.

12. Upon the Court granting Aspen's Motion for Summary Judgment and rescinding the Policy, Aspen will issue Mourer-Foster a check for any premium amounts that must be refunded.

Further Affiant Sayeth Not.

MATTHEW B. PRICE

Sworn to before me this 30th

Page 3 of 4

day of January, 2023.

Helene Poncelorancia

Notary Public
My Commission Expires:



HELENE PONCELORANCA
My Commission Expires
February 28, 2026

**Page 4 of 4**

**EXHIBIT A**



# Professional Liability Insurance for Insurance Agents and Brokers

**Aspen American Insurance Company**
**590 MADISON AVENUE, 7TH FLOOR**
**NEW YORK, NY 10022**
(A stock insurance company)

**THIS IS A CLAIMS MADE POLICY. THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**This Declarations Page is attached to and forms part of the Policy provisions.  In consideration of the premium shown, the Underwriters do hereby bind themselves each for his own part and not one for the other in favor of the Insured whose name and address is shown, for the limits or amounts specified hereon, and for the term stipulated, according to the following:**

# DECLARATIONS

**POLICY NUMBER:**           ASP334402-0120

**PRODUCER AND ADDRESS:**    All Risks Limited
                             10150 York Road, 5th. Floor
                             Hunt Valley, MD  21030

**ITEM 1.     NAMED INSURED AND ADDRESS:**

                             Mourer Foster, Inc.
                             615 North Capitol Ave.
                             Lansing, MI  48933

**ITEM 2.     POLICY PERIOD:**    From:  11/09/2020          To:  11/09/2021
                             (12:01 A.M Standard time at the Insured's address set forth above in Item 1)

**ITEM 3.     LIMITS OF LIABILITY:**

    **A.     Professional Liability:**

        **1.**     $ 1,000,000          each **Wrongful Act** or series of continuous, repeated or **Interrelated Wrongful Acts**

        **2.**     $ 2,000,000          Aggregate

        **3.**     Defense Costs shall be in addition to the limits stated above:          Yes

        (i)  $ 2,000,000     Aggregate available in any one policy year for **Defense Costs**. Once this limit stated in 3(i) is exhausted, subsequent **Defense Costs** shall be part of and not in addition to the applicable Limits of Liability as designated by Item 3A of this Declarations.

    **B.**   **First Party Breach Management Services and First Party Regulatory Proceedings:**

        **1.**   $ 150,000        Aggregate for all **Breaches and Regulatory Proceedings**

**ITEM 4.**   **DEDUCTIBLE:**

   $ 25,000        Each **Wrongful Act, Claim, Breach, Regulatory Proceeding** or series of continuous, repeated or **Interrelated Wrongful Acts, Claims, Breaches or Regulatory Proceedings**.

**ITEM 5.**   **RETROACTIVE DATE:**   11/09/2008

**ITEM 6.**   **PREMIUM:**     **$**    **29,677**

**ENDORSEMENTS FORMING PART OF THIS POLICY AT ISSUANCE:**

1. BREACH RESPONSE GUIDE
2. MICHIGAN AMENDATORY ENDORSEMENT
3. MICHIGAN POLICYHOLDER NOTICE
4. U.S. ECONOMIC AND TRADE SANCTIONS ENDORSEMENT

In witness whereof, We have caused this Policy to be signed below by a duly authorized representative of Ours.

_____
Secretary

_____
President

_____
Authorized Representative



## Professional Liability Insurance for Insurance Agents and Brokers

**Aspen American Insurance Company**
**590 MADISON AVENUE, 7TH FLOOR**
**NEW YORK, NY 10022**
(A stock insurance company)

THIS IS A "CLAIMS MADE" POLICY OF INSURANCE.   PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

The words You, Your and Yours mean the **Insured** and the words We, Us, and Our refer to the **Aspen American Insurance Company** providing this insurance. All words that are in bold face type, other than the caption titles, have special meanings set forth in Section **III.  DEFINITIONS** of the Policy.

In consideration of and subject to the payment of the premium, and in reliance upon the particulars, statements, representations, attachments and exhibits contained in and submitted with the Application which shall be the basis of this Policy and deemed to be incorporated herein, and subject to all the terms, conditions, limitations and any endorsements to this Policy, **Aspen American Insurance Company** and the **Named Insured** agree as follows:

| I. | INSURING AGREEMENTS |
|----|---------------------|

### Errors and Omissions

**A.  Professional Liability**

We shall pay on Your behalf up to the applicable Limit of Liability set forth in **ITEM 3.A.** of the Declarations all sums in excess of the Deductible set forth in **ITEM 4.** of the Declarations which You shall become legally obligated to pay as **Damages** and **Defense Costs** resulting from any **Claim** first made against You during the **Policy Period** for any **Wrongful Act** by You or other person for whose actions You are legally responsible, but only if the **Wrongful Act** is first committed on or after the **Retroactive Date** stated in **Item 5.** of the Declarations and before the end of the **Policy Period.**

### Cyber Coverage

**A.  First Party Breach Management Services**

We shall pay on Your behalf up to the applicable Limit of Liability set forth in **ITEM 3.B.** of the Declarations all sums in excess of the Deductible set forth in **ITEM 4.** of the Declarations, costs and expenses incurred by You for **Breach Management Services** due to an actual or suspected **Breach** first occurring or first discovered during the **Policy Period** and first reported to Us during the **Policy Period.**

**B.  First Party Regulatory Proceedings**

We shall pay on Your behalf up to the applicable Limit of Liability set forth in **ITEM 3.B.** of the Declarations all sums in excess of the Deductible set forth in **ITEM 4.** of the Declarations **Regulatory Expenses** incurred and **Regulatory Fines** imposed due to a **Regulatory Proceeding** first commenced against You during the **Policy Period** and first reported to Us during the **Policy Period,** as a direct result of an actual or suspected **Breach** or violation of a **Breach Notice Law** as a result of a **Breach** that is covered under **Section I. Cyber Coverage A.** above.

| II. | ADDITIONAL COVERAGE EXTENSIONS |
|-----|-------------------------------|

We will provide with the following Coverage Extensions:

**A.   Administrative Proceeding Coverage**

We shall pay up to $50,000 in the aggregate for the **Policy Period** for reasonable and  necessary legal fees and expenses You incur in the event that an **Administrative Proceeding** is first commenced against You during the **Policy Period** and reported to Us during the **Policy Period** or within sixty (60) days of the expiration of the **Policy Period,** or any **Extended Reporting Period**, if applicable, which arises from a **Wrongful Act**, provided that the **Wrongful Act** first takes place on or after the **Retroactive Date** specified in **ITEM 5.** of the Declarations and prior to the end of the **Policy Period** provided that You do not admit all or any part of the allegations.  We shall only pay those reasonable legal fees and expenses incurred with Our prior written approval.   We shall not pay any **Damages** pursuant to this Coverage Extension.

**B.   Subpoena Inquiry Coverage**

We shall pay up to $10,000 per **Subpoena Inquiry** and $30,000 in the aggregate for the **Policy Period** for all **Subpoena Inquiries** for reasonable and necessary legal fees and expenses incurred in the defense or response to a **Subpoena Inquiry** served upon You during the **Policy Period**.   In order for this coverage benefit to apply, the **Subpoena Inquiry** must be served upon You during the **Policy Period** and reported to Us within sixty (60) days of Your receipt of service by an **Insured**.   Any legal fees and expenses or other costs incurred prior to notice being received by Us or incurred without Our prior written approval will not be covered.

**C.   Court Attendance Costs Coverage**

If You are required to attend a trial, hearing or arbitration proceeding pursuant to a covered **Claim** against You then We will pay for Your reasonable expenses for each such day or part thereof that You are required to attend.   However, the most We will pay under this subsection C. is up to a total of $10,000 each **Claim** and $30,000 in the aggregate for all **Claims** made during the **Policy Period** or **Extended Reporting Period**, if applicable.

**D.   Deductible Reduction Coverage**

**1.**   If You and the Company agree to use **Mediation** and a **Claim** is fully and finally resolved by **Mediation** with Our consent and agreement, Your Deductible amount incurred for such **Claim** will be reduced by fifty percent (50%) subject to a maximum reduction of $25,000.

**2.**   If You become aware of a **Wrongful Act** or incident reasonably expected to give rise to a **Claim** and report it to Us pursuant to **Section VII. CONDITIONS 3. Reporting of Potential Claims**, Your Deductible obligation for any **Claim** which later arises therefrom will be reduced by fifty percent (50%) subject to a maximum reduction of $10,000.

**3.**   In the event the **Named Insured** is eligible to receive a reduction in the Deductible pursuant to 1. and 2. herein, the total maximum reduction of the Deductible shall not exceed a total of 50% of the applicable Deductible, subject to a maximum reduction of $25,000.

Any payments made pursuant to the foregoing subsections A. B. or C. will be made in addition to the Limits of Liability set forth in the Declarations.   There shall be no Deductible with respect to any coverage benefit provided under subsections A. B. and C. above.

| III. | DEFINITIONS |
|------|-------------|

Certain words, identified by bold text throughout this Policy, shall have the following meaning when used in this Policy:

**1.**   **"Administrative Proceeding"** means any proceeding or investigation brought by any federal, state, or municipal agency, insurance department or quasi-governmental authority.

**2.**   **"Breach"** means one or more of the following:

**a.**   loss, theft or unlawful disclosure of **Third Party Data**;
**b.**   failure to comply with any part of Your privacy policy;
**c.**   unauthorized access to or unauthorized use of a **Computer System**;

d. failure to prevent the transmission of malicious code from the **Computer System** to a third party's computer or computer system; or

e. theft of passwords or access codes, by physical or electronic means, from Your premises or **Computer System**, which results in the unauthorized access to a third party's computer or computer system.

3. **"Breach Management Services"** means one or more of the following services provided by authorized third party service providers chosen at the sole discretion of Us and with Our prior approval :

   a. forensic investigation of a **Computer System** to determine the source, cause and/or extent of a **Breach;**
   b. credit monitoring, identity theft monitoring and identity theft restoration services, for up to one year, to affected parties, including customers and clients of the **Insured,** and to any other person or party affected by a **Breach;**
   c. notifications of affected individuals or affected parties as mandated by a **Breach Notice Law,** including printing and mailing of materials;
   d. notification of local, state or federal regulatory bodies as required by a **Breach Notice Law;**
   e. legal counsel to assist in determining the applicability of and actions necessary to comply with **Breach Notice Laws;**
   f. hiring of a public relations firm, law firm or crises management firm to assist in mitigating any damage to the **Insured's** brand or reputation;
   g. any other services approved by Us at Our sole discretion.

4. **"Breach Notice Law"** means any statute or regulation requiring an entity storing **Third Party Data** on its computer or computer system to notify affected parties of any unauthorized access to such data.

5. **"Claim"** means any civil action, suit, proceeding or written demand seeking to hold You responsible for monetary **Damages** resulting from any actual or alleged **Wrongful Act**.

6. **"Computer System"** means any computer and any input, output, processing, storage or communications device, or any related network operating system or application software, that is connected to, or used in connection with such computer including laptops, tablets, smartphones and networking equipment, which is rented by, owned by, licensed to, or under the direct operational control of the **Insured.**

7. **"Damages"** means compensatory monetary amounts for which the **Insured** is legally liable, including judgments (inclusive of any pre- or post-judgment interest), awards, or settlements that are negotiated with Our consent, punitive or exemplary damages or the multiple portion of any multiplied damage award pursuant to applicable law which most favors coverage for such damages, unless such damages are uninsurable by law.   **Damages** shall not include any of the following:

   a. **Regulatory Fines;**
   b. taxes, statutory penalties or sanctions whether imposed by law or otherwise;
   c. the return of or restitution of fees, commissions or charges;
   d. amounts for which You are not financially liable;
   e. equitable relief, including any fees, costs or expenses incurred by You to comply with any such equitable relief; or
   f. any items constituting **Damages** within the definition as set forth above which may be deemed uninsurable under applicable law;
   g. **Defense Costs.**

8. **"Defense Costs"** means reasonable and necessary expenses and legal fees incurred with Our consent, such consent shall not be unreasonably withheld, in the investigation, adjustment, defense or appeal of a **Claim** against You.   **Defense Costs** shall not include salaries, overhead, wages or benefit expenses of Yours, or salaries, overhead, wages or benefit expenses of Our employees, officers or staff attorneys.

9. **"Extended Reporting Period"** means the applicable period of time after the end of the **Policy Period** for reporting **Claims** for any **Wrongful Act** committed or alleged to have been committed on or subsequent to the **Retroactive Date**, and prior to the end of **Policy Period**.

10. **"Insured"** means the **Named Insured**, and shall include any past, present or future:

a. partner, principal, director, officer, managing member, trustee, shareholder, or employee of the **Named Insured** or any **Subsidiary**, solely while acting on behalf of the **Named Insured** or **Subsidiary** in the scope of his or her duties as such;

b. temporary or leased employee or intern hired as such by the **Named Insured** and/or any otherwise covered **Subsidiary**, working under the direct supervision of an **Insured** and on behalf of such **Insured**;

c. the lawful spouse or legally recognized domestic partner of any **Insured**; provided, however, coverage will apply only if the spouse or domestic partner is a party to any **Claim** solely in his or her capacity as a spouse or domestic partner of such **Insured** person; and such **Claim** seeks **Damages** recoverable from marital community property, property jointly held by such **Insured** and spouse or domestic partner, or property transferred from such **Insured** to the spouse or domestic partner. No coverage shall be provided for any actual or alleged **Wrongful Act** by such spouse or domestic partner;

d. the estate, heirs, executors and legal representatives of an **Insured** in the event of the **Insured's** death, disability incapacity, insolvency, or bankruptcy, but only to the extent such **Insured** would have otherwise been provided coverage under this Policy;

e. an independent contractor, but only with respect to **Professional Services** which were rendered or should have been rendered on behalf of the **Named Insured** and/or any otherwise covered **Subsidiary** and within the scope of his or her duties as such; and

f. any **Subsidiary** but only with respect to any **Wrongful Act** that occurs while such entity is a **Subsidiary** of the **Named Insured**.

11. **"Interrelated Wrongful Acts"** means all **Wrongful Acts** based on, arising out of, directly or indirectly from, or in any way involving the same or related facts, circumstances, situations, transactions or events.

12. **"Mediation"** means a non-binding process in which the parties to a **Claim**, with Our consent, use a mediator to assist the parties in reaching a mutual and binding settlement. **Mediation** does not include litigation, arbitration or any court mandated proceeding.

13. **"Named Insured"** means the individual, partnership, corporation, limited liability company or other entity named in **Item 1.** of the Declarations.

14. "**Personal Injury**" means false arrest, detention, imprisonment, malicious prosecution, wrongful entry, eviction or other invasion of private occupancy, libel, slander or other defamatory or disparaging material, or publication or utterance in violation of an individual's right of privacy.

15. **"Policy Period"** means the period from the inception date to the expiration date stated in **Item 2.** of the Declarations, or any earlier cancellation date of this Policy.

16. "**Professional Services**" means services performed by You for others for a fee, commission or pro-bono, as a property, casualty, surety, life, accident, health or other insurance agent; insurance broker; insurance consultant; educator; employee benefits consultant, expert witness concerning any insurance related subject; managing general agent; managing general underwriter; program administrator; general agent; surplus lines broker; wholesale broker; claims adjustor; third party administrator; cobra administrator; claims appraiser; notary; premium financing coordinator; or as part of any loss control or risk management service. **Professional Services** shall include such services as provided via electronic means or methods as well as electronic dissemination of insurance or risk related content or material.

17. **"Regulatory Expenses"** means reasonable and necessary fees, costs and expenses consented to by Us resulting solely from the investigation, defense and appeal of a **Regulatory Proceeding** against You.

18. **"Regulatory Fines"** means any civil monetary fine or penalty imposed as a result of a **Regulatory Proceeding** or by the Payment Card Industry (PCI) Security Standards Council. **Regulatory Fines** shall not include any civil monetary fines or penalties that are not insurable by law, criminal fines, disgorgement of profits, or multiple damages.

19. **"Regulatory Proceeding** means a civil, formal administrative or formal regulatory proceeding against You brought by or on behalf of any state's attorney general, the Federal Trade Commission, the Federal Communications Commission, or any other federal, state, local or foreign governmental entity, resulting from an actual or suspected **Breach,** or a proceeding against You by the PCI Standards Council alleging a failure to comply with PCI Data Security Standards.

20. "**Retroactive Date**" means the Date designated in **ITEM 5.** of the Declarations. This Policy shall not apply to any **Wrongful Acts** committed prior to this date.

21. **"Third Party Data"** means the following when in the care, custody or control of You, including when held by an outside service provider on Your behalf:

   a. non-public personal information of an individual including social security number, driver's license number, passport number, financial account information, email address, passwords, web browsing history, location data and biometric data;

   b. protected health information as defined in the Health Insurance Portability and Accountability Act of 1996, and any similar statute;

   c. any third party's corporate information which is specifically identified as confidential and protected under a nondisclosure agreement or similar written contract.

   **Third Party Data** includes data in electronic and hard copy format.

22. "**Subsidiary**" means any entity in which the **Named Insured** directly or indirectly has an ownership interest of fifty percent (50%) or more. No coverage shall apply to any **Subsidiary** for any **Wrongful Act:**

   a. which takes place prior to its becoming a **Subsidiary** of the **Named Insured** unless specifically endorsed hereon, or

   b. until the conditions set forth in Section **VII. CONDITIONS,** 4. Acquisitions/Creations and Sale of Subsidiaries are satisfied.

23. "**Subpoena Inquiry**" means any subpoena to produce documents, to be deposed or to appear as a witness for litigation to which You are not a party.

24. "**Wrongful Act**" means any actual or alleged act, error or omission including a **Personal Injury** committed solely in the performance of or failure to perform **Professional Services.**

## IV.   EXCLUSIONS

This Policy shall not apply to any **Claim, Administrative Proceeding, Regulatory Fine** or **Subpoena Inquiry** based on, directly or indirectly arising out of or resulting from any actual or alleged:

1. criminal, fraudulent, and/or dishonest acts or omissions by any **Insured**.  We shall defend You until a judgment or other final non-appealable adjudication adverse to You establishes such conduct, but only if these allegations arise out of **Professional Services** which are otherwise covered under this Policy. You shall reimburse Us for all **Defense Costs** if such conduct is established as a matter of fact in a civil, arbitration or other proceeding, or is admitted to by any **Insured**.  However, this exclusion shall not apply to an **Insured** who did not commit, or have knowledge of, or participate in such conduct and the conduct or knowledge of one **Insured** shall not automatically be imputed to another **Insured**.

2. act or omission committed with knowledge of its wrongful nature or with intent to cause damage. However, such conduct or knowledge of one **Insured** shall not automatically be imputed to another **Insured**.

3. act, error, omission, fact or circumstance which is the subject of any notice or **Claim** under any prior Policy, or any other act, error, omission, fact or circumstance logically or causally connected to such notice or **Claim**.

4. **Wrongful Act** first committed prior to the beginning of the **Policy Period** if, before the inception date of this Policy, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or could result in a **Claim**. However, if this Policy is a renewal of one or more policies previously issued to You, and the insurance provided to You was in effect without interruption for the entire time between the inception date of the first such other Policy and the inception date of this Policy, then the reference above to the inception date of this Policy will instead refer to the inception date of the first Policy under which you were provided with continuous and uninterrupted insurance.

5. bodily injury to or sickness, disease or death of any person, or damage to or destruction of any property, including the loss of use thereof. However, this exclusion shall not apply to a **Claim** alleging **Damages** that solely arise from **Professional Services.**

6. unfair competition, or infringement of any patent, trademark, trade dress, service mark, trade secret, slogan or copyright. However, this exclusion shall not apply to any **Claim** of accidental or unintentional copyright infringement

arising out of insurance or risk related content or material first electronically disseminated by the **Insured** on or after the **Retroactive Date**.

7.  violation of the Telephone Consumer Protection Act, any federal and/or state anti-spam statutes, or any federal, state and/or local law similar to the foregoing.

8.  placement of or failure to place any reinsurance, or sale of or failure to sell any securities. However, for the purposes of this exclusion, mutual funds, annuities and life insurance shall not be considered securities.

9.  performance of or failure to perform any actuarial services or the commingling of or failure to collect or safeguard any money.

10. guarantee of any future premium payment, of any investment result or return, of any interest rate or yield, or of any tax consequence in connection with any life insurance product, annuity, mutual fund or security.

11. **Claim** made by any entity that wholly or partially controls, manages or operates any **Insured**, or owns more than 10% of any **Insured**, separately or in combination, at the time **Professional Services** are performed.

12. bankruptcy of, suspension of payments or failure to pay monies due, in whole or in part, by any:

    a.  broker or dealer in securities or commodities; or
    b.  bank or banking firm; or
    c.  insurance, reinsurance or bonding company; or
    d.  self-insurance plan, insurance pool or reciprocal, captive insurance company or risk retention group; or
    e.  managed care organization, health maintenance organization, preferred provider organization, independent physician organization or physician hospital organization.

    However, this exclusion shall not apply if, as of the effective date of a bond or insurance policy issued to Your client, the bonding or insurance company issuing the bond or insurance policy was:

    a.  rated B+ or higher by A.M. Best Company;
    b.  guaranteed by a governmental body or bodies and/or operated by a governmental body or bodies (including but not limited to Assigned Risk Plans, Joint Underwriting Associations, Fair Plans or State Insurance Funds);
    c.  a County Mutual reinsured by carriers rated no less than B+; or
    d.  rated A or better by Demotech.

## V.   DEFENSE AND SETTLEMENT OF CLAIMS

1.  **Duty to Defend**

    We shall have the right and the duty to defend any **Claim** brought against You seeking **Damages** because of a **Wrongful Act**, even if it is groundless, false or fraudulent.  We shall pay **Defense Costs** on Your behalf resulting from such **Claim**.  We shall have the right to select Defense Counsel for You.

2.  **Settlement**

    We may investigate and solicit settlement offers for any **Claim**. No offer to settle a **Claim** will be accepted without the **Named Insured's** consent, such consent is not to be unreasonably withheld.  If We recommend that the **Named Insured** accept the judgment of the trial court, appellate court, or any negotiated settlement or settlement offer and the **Named Insured** is not willing to accept such judgment or settlement, Our liability for such **Claim** shall not exceed the amount for which We could have resolved such **Claim**, (proposed resolution amount) plus any **Defense Costs** incurred up to the date We made the recommendation to resolve the **Claim**, plus 70% of any **Damages** and **Defense Costs** exceeding the proposed resolution amount. The remaining 30% of any **Damages** and **Defense Costs** shall be borne by the **Named Insured** at the **Named Insured's** own risk and will be uninsured.

3. **Cooperation and Assistance**

You shall, with respect to each covered **Claim** under this Policy:

  **a.**  cooperate with Us and upon our request attend hearings, trials and depositions and assist in securing and giving evidence and obtaining the attendance of witnesses;

  **b.**  assist in making settlements, participate in litigation defense strategies, including the making of Offers of Judgment, or any action seeking declaratory relief (which is not a coverage action);

  **c.**  assist in the enforcement of any right or contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **Claim**;

  **d.**  provide Us with any relevant materials in Your possession that will assist in the defense of the **Claim** or the determination of coverage.  If We request, You will agree to a deposition under oath.

You may not, except at Your own expense, voluntarily make any payment, assume any obligation or incur any expense without Our prior written consent.

| VI. | LIMIT OF LIABILITY, DEFENSE COSTS AND DEDUCTIBLE |
|---|---|

1. **Limits of Liability and Defense Costs**

Regardless of the number of **Claims** or **Breaches**, the number of persons or entities included within the definition of **Insured**, or the number of claimants who make **Claim** against You:

  **a.**  If **ITEM 3.A.3.** of the Declarations is marked "No", The amount stated in **ITEM 3.A.1.** of the Declarations as applicable to Professional Liability shall be the maximum limit of Our liability to pay for all **Damages** and **Defense Costs** resulting from each **Claim** for a **Wrongful Act** or series of continuous, repeated or **Interrelated Wrongful Acts**.  If additional **Claims** are subsequently made which arise out of the same **Wrongful Act** or series of continuous, repeated or **Interrelated Wrongful Acts** as **Claims** already made, all such **Claims**, whenever made,

  shall be considered first made within the **Policy Period** or **Extended Reporting Period** in which the earliest **Claim** arising out of such **Wrongful Act** was first made, and all such **Claims** shall be subject to one Limit of Liability.

  **b.**  If **ITEM 3.A.3.** of the Declarations is marked "No", The amount stated in **ITEM 3.A.2.** of the Declarations as applicable to Professional Liability Aggregate shall be the maximum limit of Our liability to pay for the sum of all **Damages** and **Defense Costs** for all **Claims** covered under this Policy.

  **c.**  If **ITEM 3.A.3.** of the Declarations is marked "Yes", then **Defense Costs** are in addition to the applicable Limits of Liability, and payment of **Defense Costs** by Us shall not reduce or exhaust, the applicable Limits of Liability until such time as the **Defense Costs** Aggregate amount in **ITEM 3.A.3(i)** is exhausted.  Once the **Defense Costs** Aggregate  amount is exhausted by payment of **Defense Costs**, any subsequent **Defense Costs** shall be part of and not in addition to the applicable Limits of Liability as designated by **ITEM 3.A.1.** and **3.A.2.** of the Declarations.

  **d.**  If **ITEM 3.A.3.** of the Declarations is marked "Yes", the amount stated in **ITEM 3.A.2.** of the Declarations as applicable to Professional Liability Aggregate shall be the maximum limit of Our liability to pay for the sum of all **Damages** for all **Claims** covered under the Policy.

  **e.**  **ITEM 3.B.** will be part of and not in addition to the Limit of Liability stated in **ITEM 3.A.1.** and **2.**

We shall not be obligated to pay any **Damages** or **Defense Costs** or to defend or continue to defend any **Claim** after the applicable Limit of Liability has been exhausted.

2. **Deductible**

We shall only be obligated to pay **Damages**, **Defense Costs,** costs and expenses incurred by You for **Breach Management Services** and **Regulatory Fines** which are in excess of the Deductible stated in **Item 4.** of the Declarations. This Deductible shall be borne by You, shall remain uninsured and its payment is a condition precedent to any payment by Us on Your behalf under this Policy. We shall have no obligation to pay all or any part of the Deductible on your behalf, but We shall, at Our sole discretion, have the right and option to do so, in which event You agree to reimburse Us any amounts so paid upon Our demand.

## VII.  CONDITIONS

1. **Territory**

   This Policy applies to **Wrongful Acts, Claims or Breaches** committed anywhere in the world.

2. **Notice and Reporting of Claim or Breach**

   As a condition precedent to Our obligations under this Policy, You must give written notice to Us of any **Claim** made against You, **Regulatory Proceeding** or any **Breach** as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or, if applicable, any **Extended Reporting Period**.

   Written notice shall be sent to:

   Aspen American Insurance Company
   590 Madison Avenue
   New York, NY 10022
   professionalliability.claims@aspenspecialty.com

3. **Reporting of Potential Claims**

   If during the **Policy Period** You become aware of any **Wrongful Act** or incident which might reasonably be expected to give rise to a **Claim**, and provide Us written notice during the **Policy Period** of the nature and date of the circumstances, specifics of the **Wrongful Act** and the name of the potential claimant, then any **Claim** subsequently made against You arising from such **Wrongful Act** shall be deemed to have been first made on the date such written notice was received by Us**.**  However, this provision does not apply during any **Extended Reporting Period.**

4. **Acquisitions/Creations and/or Sale of Subsidiaries**

   a. An entity in which the **Named Insured** directly or indirectly has an ownership interest of fifty percent (50%) or greater, which is disclosed to Us on one or more application(s) or supplemental application(s) for this coverage received by Us or our authorized representative prior to the inception date unless otherwise noted, shall, at the inception date of this Policy, be considered a **Subsidiary** and an **Insured** under this Policy.

   b. If during the **Policy Period**, the **Named Insured**:

   i. acquires or creates a **Subsidiary**, such entity shall be considered an **Insured** under this Policy:

      1) for a period of ninety (90) days from the effective date of the acquisition or creation, but only for **Wrongful Acts** which occur while the entity is a **Subsidiary**.

      2) Such coverage will apply beyond the ninety (90) day period if:
         a) written notice of such acquisition or creation with all the particulars and details about the entity and its acquisition or creation that We may require is provided to Us, and
            i) You accept any terms, conditions, or exclusions proposed by Us relative to the **Subsidiary** and, if applicable, promptly pay Us any premiums that We may require for the inclusion of the **Subsidiary**, and
            ii) We agree in writing to provide such coverage; or

         b) if the **Subsidiary** becomes so owned after the inception date of the Policy, and:
            i) its gross annual revenues do not exceed 25% of the **Named Insured's** gross annual revenues at the time it becomes so owned; and
            ii) that all business lines and insurance products provided by this entity were also previously provided by the **Insured** and fall within the scope of the **Professional Services** of the **Named Insured** as disclosed to Us on one or more application(s) or supplemental application(s) for this coverage.

    **ii.** ceases to have an ownership interest of fifty percent (50%) or greater in any entity that previously qualified as a **Subsidiary** under the Policy, then coverage for such entity shall apply only to **Wrongful Acts** occurring prior to date the **Named Insured** ceased to have an ownership interest of fifty percent (50%) or more.

**5. Extended Reporting Period:**

    **a. Automatic Extended Reporting Period**

    If You or We cancel or non-renew this Policy for any reason other than nonpayment of premium, then the insurance afforded by this Policy shall be automatically extended, subject otherwise to its terms, limits of liability, exclusions and conditions, to apply to **Claims** first made against You and reported during the sixty (60) days immediately following the effective date of such cancellation or non-renewal, but only with respect to a **Wrongful Act** occurring before the effective date of cancellation, and on or after the **Retroactive Date** stated in **ITEM 5.** of the Declarations. Such period shall hereinafter be referred to as the "Automatic **Extended Reporting Period**." No Automatic **Extended Reporting Period** is in effect if this Policy is renewed with Us.

    **b. Optional Extended Reporting Period**

    If this Policy is not renewed for any reason or is cancelled for any reason other than for non-payment of premium, You shall have the right, upon written request and the payment of an additional premium of seventy-five percent (75%) of the total annual premium stated in **ITEM 6.** of the Declarations, to a period of twelve (12) months immediately following the Automatic **Extended Reporting Period** in which to give Us written notice of **Claims** for **Wrongful Acts** occurring before the effective date of cancellation or nonrenewal, and on or after the **Retroactive Date** stated in **Item 5.** of the Declarations. Your rights contained in this clause will terminate unless We receive written notice of Your intent to exercise such rights along with the additional premium due within thirty (30) days of the effective date of cancellation or non-renewal. If You do not make this election, You shall not have the right to purchase the Optional **Extended Reporting Period** at a later time. This clause does not increase or renew the limits of Our liability and it does not apply to **Wrongful Acts** subsequent to the effective date of cancellation or non-renewal. A twenty-four (24) month **Extended Reporting Period** is available for one-hundred-thirty-five percent (135%), thirty-six (36) months for one-hundred-seventy-five percent (175%), forty-eight (48) months for one-hundred-ninety-five percent (195%) and sixty (60) months for two-hundred-ten percent (210%). Premiums due under this clause will be fully earned when paid and once paid this coverage may not be cancelled.

**6. Cancellation**

    You may cancel this Policy by surrendering it to Us or by delivering or mailing to Us notice stating when thereafter such cancellation shall be effective. We may cancel this Policy only for non-payment of premium or Deductible by delivering or mailing to You by registered, certified or other first-class mail written notice stating when not less than ten (10) days thereafter, cancellation shall be effective.

**7. Authorization**

    The **Named Insured** shall be the sole agent and shall act on behalf of all **Insureds** with respect to all matters under this Policy, including giving and receiving notices, effecting or accepting endorsements to or cancellation of this Policy, the payment of premium and receipt of any return premiums, and the purchase of the **Extended Reporting Period**.

**8. Changes**

    Notice to any agent or knowledge possessed by any agent or other person shall not effect a waiver or change in any part of this Policy or estop Us from asserting any of Our rights. The terms, conditions and limitations of this Policy can only be waived or changed by written endorsement issued to form a part of this Policy.

**9. Assignment**

    No assignment of interest under this Policy will be effective without Our written consent. However, in the event of Your death, incapacity or bankruptcy this Policy will apply to Your estate, heirs, legal representatives or assigns as if they were You, but only for **Wrongful Acts** committed by You otherwise covered by this Policy.

**10.  Subrogation**

If We make any payment under this Policy, We shall be subrogated to all Your rights of recovery therefore. You shall do whatever is necessary to secure such rights, and You shall do nothing to prejudice such rights. Any amount recovered in excess of Our total payment shall be restored to You, less the cost to Us for the recovery.  We will not exercise subrogation rights against an **Insured**.

**11**.  **Other Insurance**

This Policy shall apply only as excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy.

**12.  Action Against Us**

No action shall be taken against Us unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and the amount of Your obligation to pay shall have been finally determined either by judgment against You after adjudicatory proceedings, or by written agreement between the claimant and Us.  No person or entity shall have any right under this Policy to join Us as a party to any **Claim** against You to determine Your liability, nor shall We be impleaded by You or Your legal representative in any such **Claim**.

**13.  Bankruptcy**

Bankruptcy or insolvency of You or of Your estate shall not relieve Us of any of Our obligations under this Policy.

**14.  Headings**

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms and conditions of the Policy.

**15.  Liberalization**

If we file with the appropriate regulator, general revisions to the terms and conditions of this Policy to provide more coverage without an additional premium charge, then Your Policy will automatically provide this additional coverage as of the date the filed revision is effective in the state shown in  **ITEM 1.** of the Declarations.

**16.  Change In Control**

If the **Named Insured** merges with or is acquired by another organization or a receiver, conservator, trustee, liquidator or rehabilitator is appointed to take control of, supervise, manage or liquidate the **Named Insured**, coverage under this Policy will continue until the end of the **Policy Period**, but only with respect to **Wrongful Acts** or **Breaches** which first took place prior to the effective date of such merger, acquisition or appointment.  The premium for this Policy will be deemed fully earned as of the effective date of such merger, acquisition or appointment.

**17.  Representations**

You agree that all representations made and statements contained within the Application for this Policy are true, accurate, and complete.  Such statements and information are the basis for Our issuance of this Policy and are incorporated into and constitute a part of this Policy. In the event of any material untruth, inaccurate or incomplete information or misrepresentation in the Application, this Policy will be void ab initio.

**18.  Entire Agreement**

You agree that this Policy, including the Application and any endorsements, constitutes the entire agreement between You and Us relating to this insurance. The terms, conditions and limitations of this Policy can only be waived or changed by written endorsement issued by Us.

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**BREACH RESPONSE GUIDE**

In consideration of the premium that We have charged You, it is hereby understood and agreed that:

1. The third party service providers (each a "Preferred Provider") and their respective services described in this endorsement are pre-approved by Us to assist You in the event of a **Breach**. Preferred Providers are not affiliated with Us and are solely responsible for all services.

2. **BREACH MANAGEMENT SERVICES HOTLINE**:

   The Breach Management Services Hotline (BMSH) is provided to assist You with responding rapidly, and consistent with industry best practices, to a **Breach**. An **Insured** calling the BMSH will be prompted to leave a voicemail, including return contact information and their Aspen Policy number. The voice message will then be automatically forwarded to Us, as well as to the **Breach Management Services** Preferred Provider identified in Paragraph **3.a.** of this endorsement. You will typically receive a response from either the **Breach Management Services** Preferred Provider or Us within four (4) business hours from the time such voicemail was received, however, longer response times may occur.

   Calling the BMSH is not a substitute for the **Insured's** reporting and notice obligations under the Policy. As a condition precedent to coverage, the **Insured** must comply with all obligations under the Policy, including without limitation, providing Us notice of any **Breach** in accordance with Section **IV. CONDITIONS**, subsection **2. Notice and Reporting of Claim of Breach** of this Policy.

   **BREACH MANAGEMENT SERVICES HOTLINE:**

   **Aspen BMS (844) 835-ABMS (2267)**

3. **Breach Management Services**:

   a. Mullen Coughlin, LLC is the exclusive Preferred Provider pre-approved by Us to provide **Breach Management Services**, as defined in Section **III. DEFINITIONS**, subsection **3.d., 3.e., 3.f. and 3.g.**, in connection with a **Breach**. Any decision to engage the services of Mullen Coughlin, LLC is solely at the **Insured's** discretion.

      If the **Insured** does elect to retain the services of Mullen Coughlin, LLC, the **Insured** agrees to execute an engagement letter outlining the services to be provided. Our liability will only apply to **Breach Management Services**, as defined in Section **III. DEFINITIONS**, subsection **3.d., 3.e., 3.f. and 3.g.**, provided by Mullen Coughlin, LLC, regardless of any other services that may be stated in the engagement letter between the **Insured** and Mullen Coughlin, LLC or otherwise provided by Mullen Coughlin, LLC.

   b. Ankura is the Preferred Provider pre-approved by Us to provide **Breach Management Services**, as defined in Section **III. DEFINITIONS**, subsection **3.a,** to the **Insured** in connection with a **Breach**. Ankura's services include**:**

      i. Evaluation and analysis of the **Insured's Computer System** to gather and preserve evidence for determining the breadth and source of a **Breach**;

      ii. Data mining to identify the affected parties; and

      iii. Remediation of a **Breach** on the **Insured's Computer System.**

   c. AllClear ID is the Preferred Provider pre-approved by Us to provide **Breach Management Services**, as defined in Section **III. DEFINITIONS**, subsection **3.b. and 3.c.** on behalf of the **Insured** in connection with

a **Breach**. AllClear ID's services include:

i.   Management of notification letter printing, mailing (via first class mail) and return mailing processing;

ii.   Change of address lookup and address verification;

iii.   Social Security Number verification and death registry lookup;

iv.   Enrollment in Triple Bureau Credit Monitoring for a period up to twelve (12) months from the date of enrollment;

v.   Enrollment in ChildScan for individuals under the age of 18, with continuous service until they reach the age of majority;

vi.   Automatic enrollment in Identity Protection, Repair and Resolution Services for a period of twelve (12) months from the date of enrollment; and

vii.   Call Center Services for a period of up to twelve (12) months following notification of a **Breach**.

4.   Nothing in this endorsement is meant nor will it be construed as a guarantee that the Preferred Providers will be available to provide the services described herein. We reserve the right to substitute a provider of like qualifications and competency in the event that a Preferred Provider is unavailable to perform the services. We may also change, amend or supplement its Preferred Providers from time to time for any reason. Both We and You will agree in writing prior to retaining any vendor that is not a Preferred Provider.

5.   Without the prior written consent of Us, no coverage will be available under this Policy for any services performed by, or any engagement of, any third party service providers that are not specifically identified in this endorsement.

If the **Insured** elects, with the prior written consent of Us, to engage the services of a third party service provider not identified as a Preferred Provider in this endorsement, any costs and expenses by You for **Breach Management Services** incurred shall be borne by the **Insured** at the Insured's own risk and will be uninsured.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 11/09/2020

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

## U.S. ECONOMIC AND TRADE SANCTIONS ENDORSEMENT

In consideration of the premium that We have charged You, it is hereby understood and agreed that:

Whenever coverage provided by this Policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 11/09/2020

ASPCO1167 0417

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

## MICHIGAN POLICYHOLDER NOTICE

**NOTICE TO EXEMPT COMMERCIAL POLICYHOLDERS
DEREGULATION - FORMS & RATES**

This policy is exempt from the filing requirements of § 2236 of the Insurance Code of 1956, 1956 PA 218, MCL § 500.2236.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 11/09/2020

ASPBRP055MI 0118

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**MICHIGAN AMENDATORY ENDORSEMENT**

In consideration of the premium that We have charged You, it is hereby understood and agreed that:

1.  Section **VII. CONDITIONS**, subsections **2. Notice and Reporting of Claim or Breach** and **3. Reporting of Potential Claims** are amended to include the following:

    Notice given by or on behalf of You to Our authorized agent, with particulars sufficient to identify You, shall be considered notice to Us.

    Failure to give any notice required by this condition within the time period specified shall not invalidate any **Claim** or potential **Claim** made by You if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

2.  Section **VII. CONDITIONS**, subsection **6. Cancellation** is amended to include the following:

    **6.   Cancellation**

    We will send You any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or twenty-five dollars ($25), whichever is greater.

3.  Section **VII. CONDITIONS** is amended to include the following:

    **Non-Renewal**

    If We elect not to renew this Policy, We will mail or deliver to your last mailing address known to Us or the Our authorized agent, written notice of the nonrenewal not less than thirty (30) days before the expiration date of the Policy. If notice is mailed, proof of mailing shall be sufficient proof of notice.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of Michigan.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 11/09/2020

ASPBRP055MI 0118

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**EXTENDED REPORTING PERIOD (TAIL-ONLY) ENDORSEMENT**

In consideration of the premium that We have charged You, it is hereby understood and agreed that:

**1.** Section **VII. CONDITIONS,** subsection **5**. **Extended Reporting Period** is deleted in its entirety.

**2**. Section **I. INSURING AGREEMENTS,** subsection **I.A Professional Liability** is deleted and replaced by the following:

    **A. Professional Liability**

        We shall pay on Your behalf up to the applicable Limit of Liability set forth in **ITEM 3.A.** of the Declarations all sums in excess of the Deductible set forth in **ITEM 4.** of the Declarations which You shall become legally obligated to pay as **Damages** and **Defense Costs** resulting from any **Claim** first made against You during the **Policy Period** for any **Wrongful Act** by You or other person for whose actions You are legally responsible, but only if the **Wrongful Act** is first committed on or after the **Retroactive Date** stated in **ITEM 5.** of the Declarations and before 01/21/2021.

        The policy premium shall be fully earned as of the effective date of this endorsement, and this Policy may not be cancelled by You or Us except for non-payment of premium.

It is further agreed and understood that You shall have up to and including 03/22/2026 in which to give Us written notice of **Claim** otherwise covered by this Policy. This clause does not increase or renew Our Limits of Liability.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 01/21/2021

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**CANCELLATION ENDORSEMENT**

In consideration of the return premium of $23,742.00, it is hereby agreed and understood that this policy is cancelled in its entirety effective 01/21/2021.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT FORM A PART OF POLICY NUMBER: ASP334402-0120

Issued By: Aspen American Insurance Company

Issued To: Mourer Foster, Inc.

Effective Date: at 12:01AM on 1/21/2021  12:00:00AM

**EXHIBIT B**



## Professional Liability Insurance Application for Insurance Services

Coverage provided by Nautilus Insurance Company, an Arizona Corporation

> **CLAIMS MADE WARNING FOR APPLICATION: This Application is for a Claims Made and Reported Policy, relating to CLAIMS made against the INSUREDS during the POLICY PERIOD or any EXTENDED REPORTING PERIOD that may apply.**

This Application is to be completed with respect to the <u>entire</u> Applicant Firm. "Applicant Firm" means the entity named in item 1 of this Application and all Related Party Applicants. "Related Party Applicant" means any other entity (including Subsidiaries, Affiliates and Predecessor Firms) for which coverage is requested and named in Question 6 of this Application.

## Requested Coverage

Limits: $ <u>1,000,000/$2,000,000</u>          Retroactive Date: <u>11/9/2008</u>

Deductible: $ <u>25,000</u>          Effective Date: <u>11/9/2020</u>

## General Information

1. Name of Applicant Firm proposed as the first Named Insured: <u>Mourer Foster, Inc.</u>

2. a. Business Address: <u>615 N Capitol Ave</u>

     City, State, Zip: <u>Lansing, MI 48933</u>

   b. Mailing Address (if different from 2.a.): _____

     City, State, Zip: _____

   c. Business Phone: <u>(517) 371-2300</u>

   d. Website Address: <u>www.mourerfoster.com</u>

   e. Contact Name, Title and E-mail: <u>Sherry Alexander, COO, 517-346-5206</u>

3. Date business was established: <u>1/1/1933</u>

4. Applicant Firm is a:  ☒ Corporation  ☐ LLC  ☐ Partnership  ☐ Other: _____

   a. Associations of which Applicant Firm is a member: _____

   b. States in which Applicant Firm is licensed: <u>All 50 states</u>

   c. Branch offices or additional locations: <u>N/A</u>

   d. Is the Applicant Firm a successor-in-interest to any predecessor entity?          ☐ Yes  ☒ No

   e. Is the Applicant Firm owned or controlled by, or affiliated with, any other entity?          ☐ Yes  ☒ No

   f. Has the name of the Applicant Firm changed in the past 5 years?          ☐ Yes  ☒ No



If "Yes" to Questions 4.d., 4.e. or 4.f., please explain:

5.  During the past 5 years has the Applicant Firm been involved in any merger, acquisition, consolidation, divestiture, bankruptcy or dissolution, or in the next 12 months does it have any plans for any merger, acquisition, consolidation, divestiture, bankruptcy, dissolution or creation of a new business, subsidiary or division?   ☐ Yes   ☒ No   If "Yes", please explain:

6.  Please provide the following information for all Related Party Applicants for which coverage is desired:

| Entity Name | Relationship to Applicant Firm | Nature of Business | Applicant Firm's % of Ownership | |
| --- | --- | --- | --- | --- |
| Mourer Foster Administrative | Owned by Firm | Creates/manages self-insured | | % |
| Services, Inc. | | plans | 100 | % |
| Capitol Premium Finance | Owned by Firm | Owned premium finance com | 100 | % |
| | | | | % |
| | | | | % |

7.  During the past 5 years has any principal, partner, member, officer, director or professional employee of the Applicant Firm provided, or in the next 12 months does any principal, partner, member, officer, director or professional employee of the Applicant Firm plan to provide, professional services for any entity (other than the Applicant Firm) in which he, she or the Applicant Firm has an ownership interest?   ☐ Yes   ☒ No   If "Yes", please explain:



## Professional Services

8. Please provide the commission and fee income for the professional services performed by the Applicant Firm.

| | Services Provided | Projected 12 Months | Past 12 Months | 2nd Past 12 Months |
|---|---|---|---|---|
| Retail Agent | ☒ Yes ☐ No | $ 6,545,000.00 | $ 5,691,000.00 | $ 5,958,000.00 |
| Broker/Wholesaler | ☐ Yes ☐ No | $ | $ | $ |
| Claims Adjustor/Administrator* | ☐ Yes ☐ No | $ | $ | $ |
| MGA/MGU/Program Administrator* | ☐ Yes ☐ No | $ | $ | $ |
| Premium Financing | ☒ Yes ☐ No | $ 50,000.00 | $ 44,000.00 | $ 56,000.00 |
| Risk Manager/Loss Control | ☐ Yes ☐ No | $ | $ | $ |
| Surplus Lines Broker | ☐ Yes ☐ No | $ | $ | $ |
| Third Party Administrator* | ☐ Yes ☐ No | $ | $ | $ |
| Other (Specify): | ☐ Yes ☐ No | $ | $ | $ |
| **Total Commission & Fee Income** | | $ 6,595,000.00 | $ 5,735,000.00 | $ 6,014,000.00 |

**\*Please complete the MGA/MGU, TPA and Claims Handling Supplement**

9. During the past 5 years has the Applicant Firm engaged in, or within the next 12 months does the Applicant Firm plan to engage in, any services or business activities other than those indicated in Question 8 above?
☐ Yes   ☒ No   If "Yes", please explain:

10. During the past 5 years did, or in the next 12 months will, the Applicant Firm:

   a. Specialize in any programs or classes of business?   ☐ Yes ☒ No

   b. Place coverage with or been involved in Self Insured/Captives, Risk Retention Groups, Risk Purchasing Groups, or Multiple Employer Trusts?   ☒ Yes ☐ No

   c. Provide services to, sell or market the services of, or contract with Professional Employer Organizations or any similar organizations?   ☐ Yes ☒ No

   d. Have any cluster arrangements?   ☐ Yes ☒ No

   If the response to any part of this Question is "Yes", please explain

   Create and manage self-insured plans through Mourer Foster Administrative Services, Inc.



11. During the past 5 years did the Applicant Firm or any partner, officer, employee, independent contractor or subcontractor place, or over the next 12 months does any partner, officer, employee, independent contractor or subcontractor plan to place, mutual funds or any other securities?  ☐ Yes  ☐ No
   If "Yes", please complete the Mutual Funds & Securities Supplement

12. Please provide the following information for business placed by or on behalf of the Applicant Firm:

|  | Projected 12 Months | Past 12 Months | 2nd Past 12 Months |
|---|---|---|---|
| Total P&C gross written premium volume | $ 37,338,000.00 | $ 32,468,000.00 | $ |
| Total Life, A&H gross written premium volume | $ 4,710,000.00 | $ 4,095,000.00 | $ |
| Total P&C commission income | $ 6,318,000.00 | $ 5,494,000.00 | $ |
| Total Life, A&H commission income | $ 226,000.00 | $ 197,000.00 | $ |
| Other income including fee income Describe: Finance Company Income | $ 50,000.00 | $ 44,000.00 | |
| **Total Commission & Fee Income (Must match Total in Question 8 above)** | $ 6,595,000.00 | $ 5,735,000.00 | $ |

13. Please provide the percentage of Total Commission & Fee Income for the past 12 months that was derived from placements or services rendered for clients located outside the United States:  __100__ %

14. Please provide the percentage of policies written on a direct bill basis:  __66__ %

15. Please provide the percentage of gross written premium placed through state administered funds:  __<.1__ %

16. Please provide the percentage of gross written premium placed through MGAs, other brokers or intermediaries:  __.3__ %



**Berkley**
**Service Professionals**
A division of Berkley Managers Insurance Services, LLC
a Berkley Company

17. Please provide the gross written premium volume for the past 12 months production for the following:

| COMMERCIAL LINES | | PERSONAL LINES | |
|---|---|---|---|
| Auto (Non-Standard) | $ | Auto (Non-Standard) | $ |
| Auto (Standard) | $ 3,279,131.00 | Auto (Standard) | $ 349,304.00 |
| Aviation | $ 10,593.00 | Earthquake | $ 63.00 |
| Bonds/Surety | $ 8,276,954.00 | Fire (Non-Standard) | $ 429,582.00 |
| CGL/Package | $ 8,421,667.00 | Homeowners | $ 1,619,932.00 |
| CMP/Package | $ | Mobile Homes / RV | $ 39,466.00 |
| Crop/Hail | $ | Motorcycles | $ 8,813.00 |
| DIC | $ | Umbrella | $ 57,528.00 |
| Flood | $ 3,999.00 | Wind/Flood | $ |
| Inland Marine | $ 816,703.00 | Other (specify): | $ |
| Long Haul Trucking | $ 18,050.00 | **TOTAL PERSONAL LINES** | $ 4,979,838.00 |
| Medical Malpractice | $ | **LIFE, ACCIDENT & HEALTH** | |
| Products Liability | $ | A&H, Group | $ 3,726,883.00 |
| Professional Liability/D&O/EPL | $ 254,974.00 | A&H, Individual | $ 4,095.00 |
| Umbrella/Excess | $ 778,609.00 | Annuities | $ |
| Wet Marine | $ | HMO/PPO/DSP | $ 81,910.00 |
| Workers Compensation | $ 4,491,495.00 | Life, Group | $ 40,954.00 |
| Other (specify): BLDR/CPL/OCP | $ 1,154,208.00 | Life, Individual | $ 241,634.00 |
| **TOTAL COMMERCIAL LINES** | $ 27,488,333.00 | Other (specify): | $ |
| | | **TOTAL LIFE, ACCIDENT & HEALTH** | $ 4,095,476.00 |

18. Please provide the following information for the top 5 insurance companies for whom the Applicant Firm produces premium.

| Insurance Company Name | Years Represented | Annual Premium Volume | A.M. Best Rating |
|---|---|---|---|
| Fremont Insurance | 14 | $ 2,639,000.00 | A- |
| Blue Cross Blue Shield | | $ 2,509,000.00 | A |
| Auto Owners | 45 | $ 2,064,000.00 | A++ |
| United States Fire | | $ 2,036,000.00 | A |
| Chubb/Ace | 61 | $ 1,981,000.00 | A++ |



19. Please list ALL carriers rated NR or B+ or less by A.M. Best for whom the Applicant Firm produced premiums over the past 12 months If not applicable, please check here: ☒ Not Applicable

| Insurance Company Name | Years Represented | Annual Premium Volume | A.M. Best Rating | Admitted |
|---|---|---|---|---|
| | | $ | | ☐ Yes  ☐ No |
| | | $ | | ☐ Yes  ☐ No |
| | | $ | | ☐ Yes  ☐ No |

20. Please provide details regarding the process and frequency for tracking carrier ratings and what steps are taken when a carrier is downgraded below B+ by A.M. Best

21. Please list ALL carriers with whom agency contracts have been terminated in the past 5 years and the reason for termination (if none, state "None").

22. Please list ALL insurers, trusts, organizations or other insurance vehicles with whom the Applicant Firm has placed business in the past 5 years that have been declared bankrupt, insolvent or been placed in receivership, liquidation or rehabilitation or has been financially unable to meet all or part of its financial obligations (if none, state "None").

## Operations

23. Please provide the following information for all employees, independent contractors, sub-agents, sub-producers and solicitors.

| | Total Number | Average Years of Experience | Average Years with Applicant | Turnover Rate Past 12 Months |
|---|---|---|---|---|
| Principals, Partners and Officers | 1 | 39 | 39 | 0 % |
| Licensed Professionals (not included above) | 10 ⊞ | 20 ⊞ | 20 ⊞ | 0 % |
| All other staff | 18 | 15 | 10 | 13 % |
| **TOTAL STAFF** | 29 | | | % |



24. How many licensed professionals are independent contractors, sub-agents, sub-producers or solicitors? 0 _____

   a.  Is the insurance to which this Application applies intended to cover all of the Applicant Firm's independent contractors, sub-agents, sub-producers and solicitors?  ☐ Yes  ☐ No

   b.  If "No" to Question 24.a, does the Applicant Firm require all independent contractors, sub-agents, sub-producers and solicitors to carry professional liability insurance?  ☐ Yes  ☐ No  ☒ Not applicable

   c.  If "Yes" to Question 24.b., minimum professional liability limits are: $_____

25. Please list all principals, partners, officers and licensed producers of the Applicant Firm.

| Name | Position/ Title | License Number | Years Licensed | Years with Applicant Firm |
|---|---|---|---|---|
| John T. Foster | President | 0065654 | 39 | 39 |
|  |  |  |  |  |
|  |  |  |  |  |

26. Is a background check required prior to hiring new employees, independent contractors, sub-agents, sub-producers and solicitors?  ☒ Yes  ☐ No  If "No", please explain:

27. Does any principal, partner, officer, director or other professional employee of the Applicant hold any non-insurance license or designation (i.e, law license, real estate license, C.P.A., etc.)?  ☐ Yes  ☒ No
If "Yes", please explain:



## Risk Management

28. Does the Applicant Firm:

| | | |
|---|---|---|
| a. | Maintain a central diary or suspense system including a policy expiration list | ☒ Yes ☐ No |
| b. | Require quotes, bind orders, binders, policy change requests and cancellation requests to be in writing | ☒ Yes ☐ No |
| c. | Require a signed reduced coverage statement when a policy is renewed with less coverage | ☒ Yes ☐ No |
| d. | Check all applications, policies and endorsements for accuracy | ☒ Yes ☐ No |
| e. | Always require insurers to provide written confirmation of receipt of claim notice | ☒ Yes ☐ No |
| f. | Have a specific orientation program / office manual for all employees | ☒ Yes ☐ No |
| g. | Have a computerized accounting, billing and production system | ☒ Yes ☐ No |
| h. | Have a corporate-wide privacy policy | ☒ Yes ☐ No |
| i. | Have a computer security policy | ☒ Yes ☐ No |
| j. | Have a document retention and destruction policy | ☒ Yes ☐ No |
| k. | Use security and firewall technology including anti-virus software | ☒ Yes ☐ No |
| l. | Provide training for employees on privacy and information security issues | ☒ Yes ☐ No |
| m. | Encrypt electronically-stored personally identifiable information (other than employee information) | ☒ Yes ☐ No |

Please explain all "No" responses:

## Prior and Current Insurance

29. List the Professional Liability Insurance carried for each of the past 5 years:

| Insurance Company | Policy Period | Limit of Liability | Deductible/SIR | Premium |
|---|---|---|---|---|
| Nautilus Insurance Co | 11/9/2019-2020 | $ 1 Mil/$2 Mil | $ 25000 | $ 23,900.00 |
| Lloyds of London | 11/9/2018-2019 | $ 1 Mil/$2 Mil | $ 25000 | $ 37,500.00 |
| Lloyds of London | 11/9/2017-2028 | $ 1 Mil/$2 Mil | $ 25000 | $ |
| Lloyds of London | 11/9/2016-2027 | $ 1 Mil/$2 Mil | $ 25000 | $ |
| Lloyds of London | 11/9/2015-2016 | $ 1 Mil/$2 Mil | $ 25000 | $ |

30. Current policy prior acts limitation or retroactive date: __11/9/2008__



31. Has any insurance carrier ever rescinded, cancelled or non-renewed the professional liability insurance of the Applicant Firm or any predecessor entity?   ☐ Yes   ☒ No *(This does not apply in Missouri. Missouri Applicants — Do not answer this question)*   If "Yes", please explain:

## Claims Experience and Representations

**IMPORTANT NOTICE:  All known claims and circumstances that could result in a professional liability claim are specifically excluded from coverage.  Report all known claims and circumstances to your current insurer.**

32. Has any past or present principal, partner, officer, director, managing member, employee, independent contractor, sub-agent, sub-producer or solicitor of the Applicant Firm ever been investigated or convicted of a felony?   ☐ Yes   ☒ No   **If "Yes", please provide complete details on a separate sheet, including the present status of any individuals involved.**

33. During the past five years, has any past or present principal, partner, officer, director, managing member, employee, independent contractor, sub-agent, sub-producer or solicitor of the Applicant Firm ever been the subject of any disciplinary action by any administrative, disciplinary, governmental or regulatory agency, board or body or had his or her insurance license revoked or suspended?   ☐ Yes   ☒ No   **If "Yes", please provide complete details on a separate sheet, including the present status of any individuals involved.**

34. During the past five years, has any professional liability claim or suit been made against the Applicant Firm or any past or present principal, partner, officer, director, managing member, employee, independent contractor, sub-agent, sub-producer or solicitor of the Applicant Firm?   ☒ Yes   ☐ No   **If "Yes", please complete a Claim Supplement for each claim or suit.**

35. Is the Applicant Firm or any principal, partner, officer, director, managing member or professional employee in the Applicant Firm aware of any fact, circumstance, or situation that might result in any professional liability claim or suit against the Applicant Firm or any past or present principal, partner, officer, director, managing member, employee, independent contractor, sub-agent, sub-producer or solicitor of the Applicant Firm?   ☐ Yes   ☒ No   **If "Yes", please complete a Claim Supplement for each potential claim.**



**Berkley**
**Service Professionals**
A division of Berkley Managers Insurance Services, LLC
a Berkley Company

## Please Read Carefully

On behalf of all proposed INSUREDS, I agree that this application: (1) is true to the best of my knowledge and I have not suppressed or misstated any material facts, (2) shall be the basis of the contract with the insurance company, and (3) is part of any POLICY the insurance company may issue to the Applicant Firm. I understand that all written statements, materials and supplemental applications submitted with this application are incorporated into this application and made a part thereof. I further agree that: (1) completion of this application does not bind the insurance company to sell nor the Applicant Firm to purchase the insurance, and (2) if the information supplied in this application changes between the date stated below and the time when the POLICY is issued, I will immediately notify the insurance company in writing of such changes, and the insurance company may withdraw or modify any outstanding quotations and/or authorizations or agreements to bind the insurance.

11-6-2020
_____
Dated

_____
Signature (must be a Partner, Officer or Principal)

President
_____
Title of Partner, Officer or Principal

John T. Foster
_____
Printed Name of Partner, Officer or Principal

### Producer Information

John T. Foster
_____
Name of Licensed Producer

Mourer Foster, Inc.
_____
Name of Insurance Agency

615 N Capitol Ave, Lansing, MI 48933
_____
Address of Licensed Producer

11-6-2020
_____
Date

_____
Signature of Licensed Producer

**RETURN APPLICATION VIA EMAIL:** mplsubmissions@berkleysp.com
**Berkley Service Professionals**
**In California, A Division of Berkley Managers Insurance Services, LLC | CA License No. 0H05115**

## FRAUD NOTICE

### (Not applicable in the states mentioned below where a specific warning applies)

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO ALABAMA APPLICANTS AND CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**NOTICE TO ALASKA CLAIMANTS:** Any person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**NOTICE TO ARIZONA CLAIMANTS:** For your protection Arizona law requires the following statement to appear on this form: Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**NOTICE TO ARKANSAS, LOUISIANA, RHODE ISLAND AND WEST VIRGINIA APPLICANTS AND CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO CALIFORNIA CLAIMANTS:** For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**NOTICE TO COLORADO APPLICANTS, POLICYHOLDERS AND CLAIMANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO DELAWARE CLAIMANTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS AND CLAIMANTS:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO APPLICANTS OF FLORIDA AND CLAIMANTS:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO IDAHO CLAIMANTS:** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.

**NOTICE TO INDIANA CLAIMANTS:** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**NOTICE TO KANSAS APPLICANTS AND CLAIMANTS:** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**NOTICE TO APPLICANTS OF KENTUCKY:** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

**NOTICE TO MAINE APPLICANTS AND CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**NOTICE TO MARYLAND APPLICANTS AND CLAIMANTS:** Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MASSACHUSETTS, TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS AND CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO MINNESOTA CLAIMANTS:** A person who files a claim with intent to defraud, or helps commit a fraud against an insurer, is guilty of a crime.

**NOTICE TO NEW HAMPSHIRE CLAIMANTS:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**NOTICE TO APPLICANTS OF NEW JERSEY:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO APPLICANTS AND CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NOTICE TO NEW YORK APPLICANTS AND CLAIMANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**NOTICE TO OHIO APPLICANTS AND CLAIMANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO APPLICANTS, POLICYHOLDERS AND CLAIMANTS OF OKLAHOMA:** WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO OREGON APPLICANTS AND CLAIMANTS:** Any person who knowingly and with intent to defraud or solicit another to defraud an insurer: (1) by submitting an application, or (2) by filing a claim containing a false statement as to any material fact thereto, may be committing a fraudulent insurance act, which may be a crime and may subject the person to criminal and civil penalties.

**NOTICE TO PENNSYLVANIA APPLICANTS AND CLAIMANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**NOTICE TO TEXAS CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.