UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASPEN AMERICAN INSURANCE CO.,

   Plaintiff,

v.

MF ACQUISITION INC., and
OHANA ENTERPRISES, LLC,

   Defendants.

_____/

CASE No. 1:21-cv-738

HON. ROBERT J. JONKER

## **OPINION AND ORDER**

### **INTRODUCTION**

This is an errors and omissions insurance coverage dispute. Ohana Enterprises LLC filed suit in New Jersey against its former insurance agency, Defendant MF Acquisition, for failing to place renewal coverage on underground storage tanks ("USTs") at Ohana's gas station. MF Acquisition tendered the lawsuit to its own errors and omission carrier, Plaintiff Aspen American Insurance, which has been providing a defense to MF in the New Jersey case under a reservation of rights. Aspen brings this action seeking a declaration that it owes no coverage under the errors and omissions policy because MF Acquisition knew or was on sufficient notice of the underlying facts to anticipate its customer's lawsuit. MF Acquisition disagrees and says it is entitled to judgment that Aspen owes coverage as a matter of law. Both sides move for summary judgment. The Court **GRANTS** Aspen's motion for summary judgment, (ECF No. 57), and **DENIES** MF Acquisition's motion for summary judgment, (ECF No. 60).

# I. BACKGROUND

### A. The UST Policy.

Ohana maintained three USTs at its gas station in New Jersey since their installation in 1990.[1] (Ohana Ans. ¶ 12). Defendant MF Acquisition procured insurance coverage for the USTs ("the UST Policy") for Ohana since 2008. MF Acquisition employee Nick Holton has managed the Ohana account since 2016. (ECF No. 59, Ex. 24, PageID.655; ECF No. 61, Ex. A, PageID.753–55; ECF No. 61, Ex. B, Page.ID770–71). The UST policy ran from year to year with a June 24 annual renewal date. (ECF No. 61, Ex. A, PageID.755–56). At least as far back as June 2018, Holton would send Ohana renewal documents shortly before the June 24 deadline, and until June 2020, Ohana renewed the UST Policy each year without issue. (ECF No. 58, Ex. 2, PageID.495–97; ECF No. 58, ECF No. 58, Ex. 4, PageID.501–09; ECF No. 61, Ex. C, PageID.828).

This case centers on Ohana's attempted renewal of the UST Policy in June 2020, which was ultimately unsuccessful. On March 9, 2020, several months before the June 24 renewal deadline, the issuer of the UST Policy sent MF Acquisition a "Notice of Non-Renewal" for the UST Policy. (ECF No. 61, Ex. D, PageID.834). Holton received the notice but did not send a copy to Ohana. Ohana also denies receiving a copy of the non-renewal notice directly from the issuer, even though MF Acquisition expected that the issuer would send a copy to Ohana. (ECF No. 61, Ex. B, PageID.773–75, 780; ECF No. 61, Ex. C, PageID.824). In any event, just a month later, on April 20, 2020, MF Acquisition received a quote from the insurer offering to renew the UST Policy. (ECF No. 61, Ex. E, PageID.837–42; ECF No. 61, Ex. F, PageID.844–52). The quote stated

---

[1] Ohana replaced the tanks in July 2021, but this does not affect the coverage dispute. (ECF No. 71; ECF No. 72).

in capital letters that it expired at 5:00 p.m. E.S.T. on June 24, 2020. (ECF No. 61, Ex. E, PageID.840). As with the non-renewal notice, there is no evidence that Holton or the insurer sent a copy of the renewal quote to Ohana at the time.

At 4:52 p.m. on June 23, 2020—*the day before the renewal deadline*—Holton finally sent Ohana an email with a renewal binder package prepared by MF Acquisition. The email stated only:

> Please see attached paperwork I need signed where highlighted and emailed back to me. I have your banking information on file for payment.

(ECF No. 61, Ex. G, PageID.854). Holton did not attach a copy of the April 20 renewal quote or otherwise flag that the renewal deadline was *the next day*. (ECF No. 61, Ex. B, PageID.779–80; ECF No. 61, Ex. G, PageID.854–65). To the contrary, the attached binder package incorrectly stated that the quote was valid for 30 days. (ECF No. 61, Ex. B, PageID.781; ECF No. 61, Ex. G, PageID.856). The binder package's only reference to the actual June 24 deadline is buried on the fourth page of the attachment, which listed June 24, 2020 as the "[d]esired effective date of coverage." (ECF No. 61, Ex. G, PageID.859). Holton did not follow up with Ohana on June 24 to remind it that the UST Policy needed to be renewed by the end of the day to remain active. (ECF No. 61, Ex. B, PageID.782–84).

June 24 passed without Ohana submitting the signed renewal documents and without any contact between MF and its customer. Ohana ultimately did return the signed binder package to Holton but not until July 8, 2020. (ECF No. 61, Ex. A at PageID.758–59; ECF No. 61, Ex. B, PageID.785–86; ECF No. 61, Ex. H, PageID.867–78). This was within the 30-day window incorrectly recited in the binder package that MF had sent to its customer, but fourteen days after the UST Policy's actual June 24 renewal deadline. Unsurprisingly, the issuer refused to renew the UST Policy because it was late. (ECF No. 61, Ex. C, PageID.827; ECF No. 61, Ex. I, PageID.880).

Neither Holton nor anyone else at MF Acquisition informed Ohana that coverage had lapsed. (ECF No. 61, Ex. B, PageID.786–87; ECF No. 61, Ex. C, PageID.829–30). Instead, between July and December 2020, Holton and MF Acquisition repeatedly—but unsuccessfully—attempted to bind coverage for the USTs through other companies. (MF Acquisition Ans. ¶¶ 22–23; ECF No. 61, Ex. J, PageID.884–87; ECF No. 61, Ex. K, PageID.889–902; ECF No. 61, Ex. L, PageID.904–07; ECF No. 61, Ex. M, PageID.909–10; ECF No. 61, Ex. N, PageID.912). The first attempt occurred in mid-July, approximately a week after Ohana thought it had renewed the UST Policy. (ECF No. 61, Ex. J, PageID.884–87). MF Acquisition did not inform Ohana that the USTs were uninsured until December 22, 2020, when Ohana asked MF Acquisition for a copy of the nonexistent UST Policy. (ECF No. 61, Ex. I, PageID.880; ECF No. 61, Ex. O, PageID.914). Indeed, the only communication between MF Acquisition and Ohana between July and December 2020 was a cryptic email from MF Acquisition in July that—without any context—requested Ohana provide tank tightness testing information. (ECF No. 61, Ex. M, PageID.909–10).

Ohana retained counsel shortly after it learned of the non-renewal of the UST Policy in December 2020. On January 5, 2021, Ohana's counsel sent MF Acquisition a demand letter, alleging that MF Acquisition had acted improperly by failing to renew the UST Policy. (ECF No. 61, Ex. P, PageID.916–34). Two months later, on March 17, 2021, Ohana sued MF Acquisition in New Jersey state court, alleging that MF Acquisition's failure to renew the UST Policy amounted to fraudulent misrepresentation, legal fraud, fraud in the inducement, breach of contract, deception, and breach of the covenant of good faith and fair dealing ("the New Jersey litigation"). (ECF No. 59, Ex. 23, PageID.645–51). The New Jersey litigation is ongoing. (ECF No. 72, PageID.1156).

**B. The Aspen Policy.**

After Ohana initiated the New Jersey litigation, MF Acquisition tendered Ohana's claim to its professional liability insurer, Plaintiff Aspen American Insurance Company. (ECF No. 61, Ex. Q, PageID.937–48). MF Acquisition acquired the policy ("the Aspen Policy") on November 9, 2020, after MF Acquisition's President, John Foster, submitted an application on November 6, 2020. (ECF No. 59, Ex. 16, PageID.603–19). As of November 6, MF Acquisition had still not informed Ohana that the USTs were uninsured. Nonetheless, Foster answered "no" to Question 35 on the Aspen application, which asked whether "[MF Acquisition] or any [MF Acquisition] principal, partner, officer, director, managing member or professional employee [was] aware of any fact, circumstance, or situation that might result in a professional liability claim or suit" against MF Acquisition. (ECF No. 58, Ex. 15, PageID.598).

Based on the terms of the Aspen Policy, Aspen agreed to defend MF Acquisition in the New Jersey litigation, subject to a standard of reservation of rights. (Am. Compl., Ex. I, PageID.304–09). Aspen then filed this declaratory judgment action, alleging that it does not owe any coverage because MF Acquisition's claim falls under the Aspen Policy's prior knowledge exclusion. (Am. Compl. ¶¶ 47–54). According to Aspen, the exclusion applies because MF Acquisition knew or reasonably should have known by November 9, 2020—the effective date of the Aspen Policy—that its failure to procure a renewal of the UST Policy could result in a lawsuit against it. (*Id.*). Alternatively, MF Acquisition contends that it is entitled to rescind the Aspen Policy because Foster's answer to Question 35 on the Aspen Policy application was a material misstatement. (*Id.* ¶¶ 47–54).

Aspen and MF Acquisition filed competing motions for summary judgment. (ECF No. 57; ECF No. 60). Under FED. R. CIV. P. 56(a), a movant is entitled to summary judgment "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter law." *See, e.g.*, *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (standard applicable to cross-motions for summary judgment is the same as when a motion is filed by only one party). The parties agree that Michigan law governs this insurance coverage dispute. Applying this standard, the Court **GRANTS** Aspen's motion for summary judgment, (ECF No. 60), and **DENIES** MF Acquisition's motion for summary judgment, (ECF No. 57).

## II. ANALYSIS

### A. Prior Knowledge Exclusion.

Aspen first argues that coverage for the claims in the New Jersey litigation is barred by the "prior knowledge" exclusion in the Aspen Policy, which states:

> This Policy shall not apply to any Claim . . . based on, directly or indirectly arising out of or resulting from any actual or alleged . . .
>
> 4. Wrongful Act first committed prior to the beginning of the Policy Period if, before [November 9, 2020], any Insured knew or could have reasonably foreseen that such Wrongful Act did or could result in a Claim.

(ECF No. 59, Ex. 16, PageID.609).[2] In Michigan, insurance policies are interpreted in accordance with contract law, and exclusionary clauses are enforceable so long as they are clear and unambiguous. *See, e.g.*, *Ann Arbor Pub. Sch. v. Diamond State Ins. Co.*, 236 F. App'x 163, 165–67 (6th Cir. 2007) (collecting cases); *see also Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992) ("Exclusionary clauses in insurance policies are strictly construed in favor of the insured."). Here, the language of Exclusion 4 presents only one reasonable interpretation: claims based on circumstances or facts occurring before November 9, 2020, that MF Acquisition

---

[2] A "Claim" includes a civil action for damages, (ECF No. 59, Ex. 16, PageID.607), and "Insured" encompasses all partners, principals, directors, officers, managing members, trustees, shareholders, and employees of MF Acquisition acting on behalf of MF Acquisition and within their scope of employment, (*id.*, PageID.607–08).

knew or reasonably should have known could eventually result in a lawsuit against it are specifically excluded from coverage. *See, e.g.*, *Diamond State Ins. Co.*, 236 F. App'x at 166–67.

The claims in the New Jersey litigation fall squarely within this category of excluded claims. Well before November 9, 2020, MF Acquisition—or at the very least, MF Acquisition employee Nick Holton[3]—knew that Ohana wanted to renew the UST Policy, but that Ohana's July 8 attempted renewal was ineffective because it was submitted after the actual June 24 renewal deadline. This was a deadline that MF knew about because the insurance company emphasized it in capital letters in its April 20 renewal quote—a quotation that MF Acquistion neglected to forward to Ohana. Instead, the day before the June 24 deadline, MF Acquisition sent Ohana a binder package incorrectly reciting that the renewal quote was valid for 30 days. Ohana therefore had every reason to believe it had successfully renewed the UST Policy on July 8, but neither Holton nor anyone else at MF Acquisition informed Ohana that the USTs were actually uninsured until December of 2020 when Ohana asked for a copy of the policy. That was a month after the Aspen errors and omissions policy incepted.

Taken together, Holton—and by extension, MF Acquisition—should reasonably have realized that Ohana would file suit once it discovered the truth that its attempted renewal was ineffective, and that MF Acquisition had kept Ohana in the dark about the lapse in coverage for nearly six months. Indeed, the record is replete with evidence that Holton and MF Acquisition *subjectively knew* their conduct had created a litigation risk. Between July and December 2020—when MF Acquisition was forced to admit to Ohana that the USTs were uninsured—Holton and MF Acquisition made repeated (unsuccessful) attempts to bind coverage through other companies,

---

[3] MF Acquisition does not dispute that employee Nick Holton was acting on behalf of MF Acquisition and within the scope of his employment during the events in question.

starting only one week after Ohana thought it had renewed the UST Policy. MF Acquisition's covert shopping for a substitute UST policy indicates that it knew that its failure to procure a renewal of the UST Policy exposed, or at least potentially exposed, MF Acquisition to a lawsuit by Ohana.

MF Acquisition offers several arguments in opposition, but none are compelling. First, MF Acquisition contends that Holton's one-day renewal notice to Ohana is consistent with the timeline of its past renewal notices, specifically Holton's 2018 and 2019 renewal notices. MF Acquisition asserts that because Holton also sent the 2018 and 2019 renewal notices shortly before the key June 24 anniversary date, Ohana should have known that it needed to immediately return the signed renewal documents to avoid a lapse in coverage.

The Court disagrees. To start, unlike the June 23, 2020 renewal email, Holton's 2018 renewal email specifically stated that Ohana needed to return the signature page *that day* to renew the UST Policy. Holton's June 21, 2019 renewal email does not explicitly instruct Ohana to return the binder package by June 24, but there is no evidence in either 2018 or 2019 that Holton received a Notice of Non-Renewal in March and a renewal quote in April and then failed to send a binder package until the day before the June 24 renewal deadline. Based on the summary judgment record, the circumstances of 2020 are unique because they include not only a one-day renewal turnaround date, but also a failure by MF Acquisition to keep Ohana up to date on either the March notice of non-renewal or the April renewal quotation.

MF Acquisition's argument is further undercut by Holton and MF Acquisition's own actions upon realizing the UST Policy had lapsed. Instead of informing Ohana of the problem, they immediately and covertly attempted to place substitute coverage with other carriers. They had no reason to do this unless they saw their own potential exposure and hoped to mitigate the risk. This

is true even if the Court indulges MF Acquisition's assertion that there is a small to non-existent insurance market for 30-year-old USTs like those at issue here. (ECF No. 58, Ex. 9, PageID.545–48; ECF No. 58, Ex. 10, 559; ECF No. 58, Ex. 11, PageID.566). Indeed, this presumably made the issuer's April 2020 offer to renew the UST Policy and MF Acquisition's timely and accurate conveyance of that offer more important than in past years. A reasonable insurance agency should have been *especially* concerned about the possibility of litigation when it realized Ohana had missed a rare opportunity to insure its 30-year-old USTs.

Finally, the Court rejects MF Acquisition's argument that the prior knowledge exclusion is inapplicable because it could not have reasonably foreseen the *particular* liability and damages theory that Ohana would eventually pursue against it in the New Jersey litigation. This is *not* the applicable test. The critical inquiry is whether there was any good reason to anticipate a "claim" (here, most likely a lawsuit) of some kind. For the reasons stated above, the Court concludes that the answer to this question is a resounding "yes." Accordingly, the New Jersey litigation falls within the prior knowledge exclusion in the Aspen Policy.

**B.  Material Misstatement.**

Aspen is also entitled to summary judgment because MF Acquisition made a material misstatement in its November 6, 2020 application for the Aspen Policy. "It is the well-settled law of this state that where an insured makes a material misrepresentation in the application for insurance . . . the insurer is entitled to rescind the policy and declare it void *ab initio*." *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. 1998) (citation omitted).  MF Acquisition—through its President John Foster—answered "no" to Question 35 on the Aspen Policy application:

> Is the Applicant Firm or any principal, partner, officer, director, managing member, or professional employee in the Applicant Firm aware of any fact, circumstance, or situation that might result in any professional liability claim or suit against the Applicant Firm or any past or present principal, partner, officer, director,

> managing member, employee, independent contractor, sub-agent, sub-producer, or solicitor of the Applicant Firm?

(ECF No. 58, Ex. 15, PageID.598). This question is effectively identical to that in the prior-knowledge exclusion in the Aspen Policy. Because Nick Holton and MF Acquisition should have realized that its failure to procure a renewal of the UST Policy and inform Ohana about the lapse in coverage created a potential litigation risk, Foster's answer amounted to a misrepresentation.[4] *See* Section II.A, *supra*.

Moreover, Aspen has produced sufficient unrebutted evidence that this misrepresentation was material—i.e., that Aspen relied on MF Acquisition's answer to Question 35 in deciding whether and on what terms to offer MF Acquisition insurance. *Cf. Tudor Ins. Co. v. Associated Land Title, LLC*, No. 08-cv-11831, 2010 WL 716309, at *4 (E.D. Mich. Feb. 23, 2010) (denying summary judgment when defendant insurance applicant produced evidence that insurer had issued policies to 16 other applicants with claims histories similar to that omitted from defendant's application). In support of its summary judgment motion, Aspen submitted an affidavit from Senior Vice President Matthew Price, who Aspen designated as its corporate representative based on his review of Aspen's records and general knowledge of Aspen's practices. (ECF No. 61, Ex. R, PageID.950–52). Price explained:

> If MF Acquisition had accurately answered "Yes" to Question No. 35 and disclosed in the required claim supplement that Nick Holton, one of MF Acquisition's professional employees, had knowledge of the facts and circumstances regarding the non-renewal of Ohana Enterprise, Inc.'s ("Ohana") Policy, the risk would have been rejected and the Aspen Policy would not have been issued or, alternatively, Aspen would have issued the Aspen Policy on materially different terms, such as charging a higher premium or including an exclusion for claims arising out the disclosed circumstance.

---

[4] MF Acquisition does not dispute that Holton was a "professional employee."

(ECF No. 61, Ex. R, PageID.952 (cleaned up)). MF Acquisition does not argue that the content of the Price Affidavit fails to establish materiality. *See, e.g.*, *Oade v. Jackson Nat. Life Ins. Co. of Michigan*, 632 N.W.2d 126, 131 (Mich. 2001) (explaining that a misrepresentation is material if the insurer would have rejected the application or charged a higher premium if given correct information); *see also Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. 1995) ("Recission is justified [even] in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched.").[5] In fact, MF Acquisition's only argument regarding materiality is that the Court should not consider the affidavit because Aspen never identified Price as Aspen's corporate representative. *See* FED. R. CIV. P. 26(a)(1); FED. R. CIV. P. 37(c)(1).

MF Acquisition emphasizes that in its initial FED. R. CIV. P. 26(a)(1) disclosures, Aspen listed an unnamed "Corporate Representative of Aspen American Insurance Company" as a witness who may have information about "the underwriting of the [Aspen Policy]" but never followed up on this initial disclosure by identifying a specific corporate spokesperson. (ECF No. 59, Ex. 27, PageID.698–99; ECF No. 59, Ex. 28, PageID.706). MF Acquisition's argument, however, glosses over its own failure to serve a FED. R. CIV. P. 30(b)(6) deposition notice on Aspen. Because MF Acquisition did not seek to depose Aspen's corporate representative, it never triggered the discovery mechanism that would have required Aspen to designate and identify a human spokesperson. Consequently, Aspen was well within its rights to choose its own affiant in the summary judgment process. The Court thus rejects MF Acquisition's attempt to exclude the

---

[5] Even if MF Acquisition had disputed the substance of the Price Affidavit, the Court notes that it tracks the language in the Aspen Policy itself, which provides that "the Application [] shall be the basis of this Policy" and that Aspen relied on the application when deciding whether and on what terms to issue a policy to MF Acquisition. The Price Affidavit simply confirms a point already clear from the Aspen Policy's own language. (ECF No. 59, Ex. 16, PageID.609).

Price Affidavit and concludes that Foster's answer to Question 35 on the Aspen Policy application amounted to a material misrepresentation.

### III. CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Defendant Aspen American Insurance Co.'s motion for summary judgment, (ECF No. 60), is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that Plaintiff MF Acquisition, Inc.'s motion for summary judgment, (ECF No. 57), is **DENIED** in its entirety.


Dated:   September 28, 2023                         /s/ Robert J. Jonker
                                                                               ROBERT J. JONKER
                                                                               UNITED STATES DISTRICT JUDGE